UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:18-CV-00183-GNS-LLK

**KENNIFER DEWAYNE MAJORS**                                                                                       **PLAINTIFF**

**v.**

**ANDREW SAUL, Commissioner of Social Security**                                                    **DEFENDANT**

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Plaintiff filed a complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner denying his claims for disability benefits pursuant to Titles II and XVI of the Social Security Act. The Court referred the matter to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636.

On August 9, 2019, Plaintiff filed his fact/law summary, which the Court construes as raising two arguments; and, on August 15, 2019, he filed a memorandum in support of fact/law summary, which the Court interprets as raising four additional arguments. (Dockets # 18, 23.) The Commissioner filed his fact/law summary addressing Plaintiff's first and second arguments. (Docket # 31.) The Court ordered the Commissioner to address Plaintiff's four additional arguments. (Docket # 32.) The Commissioner filed an amended fact/law summary addressing all six of Plaintiff's arguments. (Docket # 33.)

Because the Administrative Law Judge's (ALJ's) decision is supported by substantial evidence and Plaintiff's arguments are unpersuasive, the RECOMMENDATION will be that the Court AFFIRM the Commissioner's final decision and DISMISS Plaintiff's complaint.

**The difference between DIB and SSI.**

Plaintiff filed an application for disability insurance benefits (DIB) under Title II of the Social Security Act and an application for supplemental security income (SSI) under Title XVI of the Social Security Act. (Administrative Record (AR) at 13.) The ALJ denied Plaintiff's Title II claim and granted his Title XVI

claim. (AR at 26.) As discussed below, although the rules governing DIB and SSI define "disability" the same way, entitlement to one does not necessarily entail entitlement to the other.

Title II is an insurance program that provides old-age, survivor, and disability insurance benefits (DIB) to insured individuals, based on their earnings records, irrespective of financial need. *Candee v. Comm'r of Soc. Sec.*, No. 316CV00462RGJCHL, 2020 WL 130584, at *1 (W.D. Ky. Jan. 10, 2020) (citing 42 U.S.C. §§ 403, 423). Title XVI is a welfare program that provides supplemental security income (SSI) to financially needy individuals who are aged, blind, or disabled, regardless of their insured status. *Id.* (citing 42 U.S.C. § 1382(a)).

The onset date of a disability can be critical to an individual's application for disability benefits. *Wellington v. Comm'r*, 878 F.3d 867, 872 (9th Cir. 2017). A claimant is entitled to DIB only if his disability begins by his date last insured, and these benefits can be paid for up to 12 months before his application was filed. *Id.* (citing 42 U.S.C. § 423(a)(1), (c)(2), (d)(1)(A)). In contrast, a claimant is eligible for SSI once he becomes disabled, but he cannot receive benefits for any period before his application date. *Id.* (citing 42 U.S.C. §§ 1382(c)(2), (c)(7), 1382c(a)(3)(A)). For both programs, the onset date is the date when the claimant is unable to engage in any substantial gainful activity due to physical or mental impairments that can be expected to last for at least 12 months. *Id.* (citing 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

### The ALJ's decision

On May 12, 2014, the prior ALJ denied Plaintiff's claim for Title II benefits. (AR at 103.)

On September 17, 2015, Plaintiff applied for Title II and Title XVI benefits, alleging (based on res judicata principles) a disability onset date of May 13, 2014. (AR at 13.)

The ALJ denied Plaintiff's Title II claim, finding that he was not disabled prior to December 31, 2016, when he was last insured for Title II benefits. (AR at 26.) The ALJ granted Plaintiff's Title XVI claim

beginning on August 16, 2017, his fiftieth birthday, pursuant to direct application of Rule 201.14 of Appendix 2 of the regulations, the so-called medical-vocational guidelines.[1]

The ALJ denied Plaintiff disability claims at the fifth and final step of the five-step sequential evaluation process, which applies in all Social Security disability cases. First, the ALJ found that Plaintiff has not engaged in substantial gainful activity since May 13, 2014, when he alleges he became disabled. (AR at 16.) Second, the ALJ found that Plaintiff has the following severe, or vocationally significant, impairments: psoriatic arthritis, obesity, peripheral neuropathy, left ankle capsulitis, osteoarthritis, non-insulin dependent diabetes mellitus, coronary artery disease, anxiety, and depression. (*Id.*) Third, the ALJ found that Plaintiff does not suffered from any impairment satisfying the clinical criteria of any impairment listed in Appendix 1 of the regulations, the so-called listing of medical impairments. (*Id.*)

As required in any case that advanced beyond step 3, the ALJ determined Plaintiff's residual functional capacity (RFC). The ALJ found that Plaintiff's physical impairments allow him to perform a limited range of sedentary work. (AR at 18.) He can occasionally climb ramps, stairs, ladders, ropes, and scaffolds and can frequently stoop, kneel, crouch, crawl, handle, and finger. (*Id.*) Plaintiff's anxiety and depression restrict him to simple (but detailed) instructions and procedures, involving little or no independent judgment and minimal variation; only occasional interaction with the public (but frequent interaction with co-workers and supervisors); ability to adapt to situational conditions and changes with reasonable support and structure. (*Id.*)

Fourth, the ALJ found that Plaintiff is unable to perform any past relevant work. (AR at 24.) Fifth, the ALJ found that, prior to August 16, 2017, Plaintiff was not disabled because he retained the ability to

---

[1] Rule 201.14 directs an ultimate finding of "disabled" if an individual has a maximum sustained work capability limited to sedentary work, is closely approaching advanced age (i.e., 50 to 54 years old), is a high school graduate, and has skilled or semiskilled previous work experience (skills not transferable). Rule 201.21 is the corresponding rule for an individual not yet 50 years old, and it directs an ultimate finding of "not disabled" for an individual with the same work capacity, education, and skills.

perform a significant number of unskilled, sedentary jobs in the national economy such as bench assembler, blower/stuffer, and dial marker. (AR at 25.)

## Standard of Review

The Court has jurisdiction to review the record that was before the ALJ on the date of the Commissioner's final decision and to enter a judgment, affirming, modifying, or reversing that decision. 42 U.S.C. § 405(g).

The purpose of judicial review is to determine "whether [the ALJ's decision] is supported by substantial evidence and was made pursuant to proper legal standards." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Evidence that a "reasonable mind might accept as adequate to support a conclusion" is substantial. *Sec'y of Health & Human Servs. v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is "more than a scintilla of evidence but less than a preponderance." *Rogers*, 486 F.3d at 241. Where substantial evidence supports the ALJ's decision, the Court is obliged to affirm. *Siterlet v. Sec'y*, 823 F.2d 918, 920 (6th Cir. 1987). The Court should not attempt to resolve conflicts of evidence or questions or credibility. *Bass v. Comm'r*, 499 F.3d 506, 509 (6th Cir. 2007). The Court may consider any evidence in the record, regardless of whether cited in the ALJ's decision. *Mullen v. Sec'y*, 800 F.2d 535, 545-46 (6th Cir. 1986).

## Plaintiff's arguments are unpersuasive.

First, Plaintiff argues that the ALJ's finding that, prior to August 16, 2017, he could frequently handle and finger (AR at 18) is not supported by substantial evidence in light of the January 2016 examination findings of Jeffrey Henson, M.D. (Docket # 18 at 3-4.) Plaintiff has a history of carpal tunnel syndrome.[2] Dr. Henson noted that Plaintiff stated that, after his 2003 carpal tunnel surgery, he still has

---

[2] Carpal tunnel syndrome is the compression of the median nerve as it passes through the carpal tunnel in the wrist. *Horbock v. Comm'r*, 210 F. Supp. 2d 125, 129 (D. Conn. 2002). Symptoms include pain of the hand and wrist associated with tingling and numbness, classically distributed along the median nerve (the palmar side of the thumb, the index and middle fingers, and the radial half of the ring finger) but possibly involving the entire hand. *Id.*

4

"difficulty handling objects, difficulty with utilizing his hand for any major activity … cannot lift up anything over 2 pounds." (AR at 633.) However, Dr. Henson opined that Plaintiff can use his hands, answer phones, sort mail, and pick up small objects for a short period of time as evidenced by his 5/5 grip strength, lack of evidence of sensory or reflex abnormality, lack of electromyography (EMG) nerve conduction velocity studies, normal finger abduction and apposition in both hands, lack of follow-up following hand surgery, and Tinel's sign negative bilaterally.[3] (AR at 633, 635.)

At the administrative hearing, the vocational expert (VE) testified that the previously-identified, unskilled, sedentary jobs would be eliminated if Plaintiff can only occasionally handle / finger. (AR at 60.) Dr. Henson's findings, which the ALJ gave "great weight" (AR at 24), are consistent with an ability to perform more than occasional (up to frequent) handling / fingering. The ALJ's finding that Plaintiff can frequently handle / finger (AR at 18) is further supported by the finding of the Commissioner program physician, Allen Dawson, that Plaintiff has no manipulative limitations and can frequently handle / finger, which the ALJ gave significant weight. (AR at 24, 137, 156.)[4]

Second, Plaintiff argues that the findings of his treating rheumatologist, Asad Fraser, M.D., show that, prior to August 16, 2017, he could (at most) only occasionally handle and finger. (Docket # 18 at 3.) Dr. Fraser's findings do not preclude occasional handling / fingering because (as the ALJ noted), in March 2016, Dr. Fraser started Plaintiff on Humira. (AR at 21.) By November 2016, Plaintiff's psoriatic arthritis pain was 100% better without any plaque psoriasis, and he reported only occasional hand pain. (Id.)[5] While Dr. Fraser estimated Plaintiff's degree of improvement (after taking Humira), Plaintiff cites and the

---

[3] Tinel's sign aids in diagnosis of carpal tunnel syndrome. *Horbock v. Comm'r*, 210 F. Supp. 2d 125, 129 (D. Conn. 2002). A positive Tinel's sign occurs when tingling (paresthesia) is reproduced by tapping with a reflex hammer over the site of the median nerve and carpal tunnel. *Id.*

[4] To the extent Plaintiff relies on Dr. Henson's finding that lifting / carrying "would be mildly difficult for [Plaintiff] due to the use of his cane" (AR at 635), the reliance in unpersuasive because the ALJ restricted Plaintiff to sedentary work, which does not require significant cane use.

[5] In August 2017, Plaintiff experienced a flare-up of symptoms because he stopped taking Humira. (AR at 22.) By November 2017, after resuming Humira, his psoriatic arthritis pain and plaque psoriasis were 80% better. (*Id.*)

Court finds no opinion from Dr. Fraser regarding Plaintiff's ability to handle / finger in an eight-hour work setting.

Third, Plaintiff argues that the ALJ's evaluation of his testimony of handling / fingering / gripping limitations is not supported by substantial evidence. (Docket # 23 at 6.) The ALJ acknowledged that Plaintiff testified he can lift only ten (10) pounds and that he experiences finger swelling that affects his ability to grip (e.g., hold a glass of water and fasten buttons or zippers). (AR at 22.) The ALJ found the testimony to be credible "to the extent that [Plaintiff] retains the ability to perform only a reduced range of sedentary work activity on a fulltime sustained basis." (AR at 23.) An ALJ's "[pain-]credibility findings are virtually unchallengeable" absent compelling reasons. *Ritchie v. Comm'r*, 540 F. App'x 508, 511 (6th Cir. 2013). No such compelling reasons are present here.

Fourth, Plaintiff argues that the controlling vocational hypothetical was incomplete because it did not contemplate the handling / fingering / gripping limitations to which he testified. (Docket # 23 at 7.) The hypothetical contemplates "frequent but not constant" handling and fingering. (AR at 58.) While it is true that an ALJ may rely on a vocational expert's (VE's) response to a hypothetical question only if the question accurately portrayed Plaintiff's impairments, the "ALJ [was] required to incorporate only those limitations that he or she accepted as credible." *Masters v. Comm'r*, 707 F. App'x 374, 380 (6th Cir. 2017) (citing *Casey v. Sec'y*, 987 F.2d 1230, 1235 (6th Cir. 1993)).

Fifth, Plaintiff argues that, in finding him disabled as of August 16, 2017 (his fiftieth birthday) but not earlier, the ALJ improperly applied the Appendix 2 rules in a mechanical manner. (Docket # 23 at 8.) As noted above, the ALJ granted Plaintiff's Title XVI claim beginning on August 16, 2017, pursuant to direct application of Rule 201.14. (AR at 26.) In determining whether a claimant is entitled to Title II benefits because the Appendix 2 rules require an ultimate finding of disability prior to the date last insured, the ALJ must not apply the "age categories mechanically in a borderline situation [where] you are within a few days to a few months of reaching an older age category, and using the older age category would result

in a determination or decision that you are disabled." 20 C.F.R. § 404.1563(b).  The ALJ did not violate the prohibition against mechanical application of the Appendix 2 rules because she utilized the rules to grant Title XVI benefits, not to deny Title II benefits.  Additionally, Plaintiff's Title II insured status expired on December 31, 2016, or 7.5 months (not just a "few days to a few months") before August 16, 2017.

Sixth, Plaintiff argues that the ALJ "fail[ed] to evaluate his cardiac impairments under Listing 4.00 Cardiovascular System Disorder."  (Docket # 23 at 8.)  Listing 4.00 contains definitions and general provisions for evaluating cardiovascular impairments.  *Hope v. Comm'r*, No. 3:18-CV-121-HBG, 2019 WL 4451204, at *5 (E.D. Tenn. Sept. 17, 2019).  It is merely an introductory section for evaluating the cardiovascular impairments detailed in Listings 4.02 through 4.12.  *Id.*  Plaintiff does not satisfy his third-step burden of proving the existence of a cardiovascular impairment satisfying the Listing simply by stating that his cardiac impairments satisfy Listing 4.00.  *Id.*  "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."  *Id.* at n.2 (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)).  "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones."  *Id.*[6]

### RECOMMENDATION

Because the ALJ's decision is supported by substantial evidence and Plaintiff's arguments are unpersuasive, the Magistrate Judge RECOMMENDS that the Court AFFIRM the Commissioner's final decision and DISMISS Plaintiff's complaint.

January 22, 2020

**Lanny King, Magistrate Judge**
**United States District Court**

---

[6] In addition to arguing that Plaintiff's Listing argument is waived, the Commissioner outlines why he believes Plaintiff's cardiac impairments do **not** satisfy any of the listed cardiac impairment.  (Docket # 33 at 6-11.)

7

**NOTICE**

Therefore, under the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Fed. R. Civ. P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be timely filed or further appeal is waived. *Thomas v. Arn*, 474 U.S. 140, 147 (1985).

January 22, 2020

**Lanny King, Magistrate Judge
United States District Court**